**JOHNSON et al. v. MERCER et al.**

No. 9678.

Circuit Court of Appeals, Fifth Circuit.

May 29, 1942.

As Amended June 27, 1942.

Rehearing Denied July 2, 1942.

Harry B. Barnhart, of Dallas, Tex., and W. H. F. Millar, of Waynesville, N. C., for appellants.

Luther Bohanon, of Oklahoma City, Okl., Robert O. Brown, of Duncan, Okl., Charles L. Morgan, Warren Scarborough, Oliver W. Fannin and Harry L. Logan, Jr., all of Fort Worth, Tex., and Sidney M. Cook and Charles D. Egan, both of Shreveport, La., for appellees.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

W. G. Gray, acting for himself and W. M. Redditt, secured an oil and gas lease from the Trustees of Pickering Lumber Company. The lease covered several tracts of land located in Texas, and was for a primary term of three years with provision for continuance. It was provided that the lease was to terminate if drilling operations were not begun within sixty days, and that until such time as oil, gas, or other minerals were discovered in paying quantities drilling operations were to be conducted continuously, with not more than sixty days elapsing between the abandonment or cessation of drilling of one well and the commencement of another.

Gray and Redditt drilled a well which failed to produce, and then commenced the drilling of a second well. When drilling of the second well had progressed to the depth of 4,100 feet, Gray ordered the drilling contractors to cease drilling and plug the well back to 2,945 feet for the purpose of testing the sands. The well failed to produce at this depth.

Gray and Redditt entered into contract for the sale of their lease to John G. Pundt. Pundt agreed to pay $2,500 in cash as a down payment, $5,000 ten days later, and $57,500 upon delivery of proper assignments when and if title to the property was approved by his attorney. A second contract entered into by the parties contemporaneously with the lease sale contract provided that at his own expense Pundt was to complete Gray's and Redditt's second well which had been plugged back. The contracts provided that if the attorney failed to approve the titles, Pundt was to recover his cash advances and drilling and development costs out of one-half of the oil, gas, distillate, and other minerals which might be produced from the property.

Mercer and Johnson, the drilling contractors who had been drilling the second well for Gray and Redditt, had not received pay for their work, and they refused to remove their rig from the hole and allow Pundt to complete the well. Drilling operations on the lease were at a standstill, and the sixty day limit allowed by the Pickering lease was running out. Time was of the essence, and by agreement of the parties Pundt began the drilling of a new well instead of deepening the uncompleted well which was under the domination of the original drilling contractors. In drilling the new well and developing the lease Pundt expended large sums of money, and various contracts were entered into for work which gave rise to additional obligations.

Mercer and Johnson had not been paid for their drilling work on the second well, so they filed a lien claim and filed suit against Gray and Redditt in the Texas State Court. The suit was removed to the Federal Court and a receiver was appointed to take charge of the properties. Gray filed his petition reciting the fact that many claims and obligations had arisen out of transactions involving the Pickering lease and its development. He prayed that all interested persons be made parties to the suit so that their respective rights and priorities might be established in one proceeding. Thereafter, by interventions and cross-actions, other parties, including the appellants John G. Pundt and Victor S. Johnson, were brought into the proceedings. Twenty-six distinct claims were thus brought before the court for adjudication.

The court appointed a master who, after conducting hearings for fourteen days, made findings of fact and conclusions of law and made his report to the court. Objections and exceptions to the report were filed. The court considered the objections and exceptions, filed an opinion, and approved all findings and conclusions of the master, except the one denying lien rights to Mid-Continent Supply Company and other creditors similarly situated. Judgment settling all claims was then entered, and of the many parties involved only Victor S. Johnson and John G. Pundt appealed. Claims were allowed against Pundt and Johnson, jointly and severally, as follows: Cameron Iron Works, $2,395.-58; Halliburton Oil Well Cementing Company, $1,884.60; M. M. Kinley, $1,000; National Tank Company, $1,819.14; The Pace Corporation, $835.85; V. B. Stone, $1,500; Mid-Continent Supply Company, $31,196.51; and C. M. Cope Drilling Co., $11,384.60.

Both Pundt and Johnson attack several of the awards as being not supported by the pleadings of the parties. Rules of pleading obtaining in the State Courts are not controlling, and we hold that under the liberal rules of procedure applicable to all actions in Federal Courts, the complaints, cross-complaints, answers, admissions, and the evidence in the case sufficiently raised and brought to issue all matters which were finally adjudicated by the trial court.

The record is voluminous, containing more than 1800 printed pages, much of it dealing with matters no longer in controversy. The evidence is in sharp disagreement on many issues and we shall not attempt to review it in detail. Assignments of error not discussed herein are held to be without merit.

■ The appellant Victor S. Johnson complains of the finding of the master that he and Pundt were partners in the lease development project, and that he "became liable therewith to the same extent as Pundt." It is contended that Johnson was merely lending money to Pundt for use in connection with developing the project, and that he was nothing more than an unsecured creditor of Pundt. Both Pundt and Johnson vigorously deny that a partnership ever existed between them. Although the evidence is probably not sufficient to clearly establish a partnership relationship between Pundt and Johnson, we think it was sufficient to establish Johnson's liability on the claims entered in judgment against him. There is evidence that Pundt represented that Johnson was his associate in the undertaking and was financing the operations; that Johnson participated in conferences relating to the development of the lease; and that he was vitally interested in the development, and was allowing himself to be held out as the moving financial spirit of the enterprise. The evidence was sufficient to show an association and relationship in the project sufficient to support the judgment entered against Johnson on the above named claims.

■ As to the $31,196.51 supply account claim of Mid-Continent Supply Company, Victor S. Johnson filed a cross-complaint against Pundt alleging that he had guaranteed the account at Pundt's request and upon the distinct understanding that Pundt would personally pay the full amount due Mid-Continent, but that Pundt had failed to live up to this agreement. Johnson prayed that if Mid-Continent secured judgment against him, that he be given a judgment over against Pundt and subrogation to Mid-Continent's lien. Johnson thereafter admitted liability to Mid-Continent on its claim, a severance was had, and summary judgment for the full amount of the claim plus interest was entered against him. Pundt made no contest of Johnson's cross-claim against him on the Mid-Continent transaction, and on the trial he testified that Johnson had guaranteed the account at his request and that he expected this amount to be charged back to him. Certainly, as between the parties Johnson and Pundt, the agreement as to the Mid-Continent account was valid. The claim being admitted, judgment should have been allowed to Johnson over against Pundt with subrogation as prayed in the cross-complaint. The court erred in denying this claim.

Pundt paid Gray and Redditt in excess of nine thousand dollars on the contract purchase price of the oil and gas lease, and actually expended approximately twenty thousand dollars more in developing and protecting the lease. The exact amount of his expenditures are not clear and the amounts will be ascertained and allowed by the trial court upon remand of the case. Pundt points out that under the express terms of his contracts with Gray and Redditt he was to recover his advances and development expenses out of one-half of all oil, gas, and other minerals produced, saved, and sold from the premises, "In the event all or any part of the titles to the properties are found objectionable to Buyer's attorney and the objections raised cannot be cured to the satisfaction of Buyer's attorney, and by reason of which the Buyer refuses to accept assignment of all the property to be assigned. * * *" The court approved the findings of the master that the objections to the titles found by Pundt's attorney did not justify delay in closing the deal; that Pundt had also breached an obligation to pay certain bills owed by Gray and Redditt; and that "the termination of the contract was brought about by his own breach and I conclude that Pundt cannot recover out of one-half of the minerals as provided in the contract." This finding and conclusion cannot stand. Pundt's attorney spent several months in examining the many abstracts of title and investigating separate surveys and claims. Gray's associate, Redditt, who was experienced in title work, was

assigned by Gray to work with Pundt's attorney in connection with the title work, and to help in investigations concerning adverse claims and the securing of instruments for perfection of the titles. Pundt's attorney found defects and made many and varied objections, many of which had not been cured or otherwise eliminated when Gray served notice on February 1, 1939, that he was claiming forfeiture of the contract. The attorney for Pundt immediately wrote a letter to Gray and Redditt setting out in detail his objections to the titles, to the properties. The letter was particularly directed to Gray, for Redditt had worked with the attorney and already knew the pertinent facts. In his answer to Pundt's cross-complaint, Redditt admitted the existence of defects in the titles and that his associate and partner Gray had not in any manner attempted to cure the defects. Furthermore, Mercer and Johnson, the original drilling contractors for Gray and Redditt, had filed their lien and instituted suit in the State Court, which suit upon removal was the commencement of the present action.

The record discloses that title defects were in existence, and that they were of such nature as to give a prudent and competent attorney reasonable cause to withhold approval of title until such time as they were eliminated.

By supplemental contract in the form of a letter dated November 7, 1938, Gray and Redditt agreed that if Pundt would pay certain of their overdue obligations within ten days he could have "until on or before six months from this date to pay what balance of purchase money may be due under said contract of purchase and sale, provided titles have by that time been accepted by your attorney." Pundt did not pay these obligations of Gray and Redditt, and the master held that failing to do so he had breached his contract and lost his right to recover his advances and expenses incurred and actually paid in developing the property. This supplemental letter contract did not impose an absolute obligation upon Pundt under penalty of forfeiture to make the payments to the creditors, but was in the nature of an option which was not exercised within the ten days provided.

██ None of the mentioned contracts contained forfeiture provisions, and such a provision will not be read into the instruments. That forfeitures are not favored is a principle of almost universal application, and the Texas rule as to forfeitures is well-expressed in 19 Texas Jurisprudence at pages 799-801: "Because a forfeiture is a harsh remedy, punitive in its operation, it has become a settled principle that forfeitures are favored neither in law nor in equity, as indeed, they ought not to be. * * * Accordingly the courts have expressed great reluctance to declare and enforce forfeitures if by reasonable interpretation they can be avoided." And at pages 806, 807: "To constitute a condition subsequent upon which a forfeiture may be declared because of failure of performance, the language of the condition must be clear and the condition must be created by expressed terms or by clear implication. Furthermore, the condition will be strictly construed. * * * the law will not permit a liberal construction in order to cause the forfeiture of a right secured."

██ The contracts expressly provided that if the titles were not approved by Pundt's attorney there was to be recoupment of his advances and costs. The titles were not approved, and Pundt in good faith made the advance cash payments on the purchase price and kept the lease alive by his timely drilling operations which measurably improved the property and paved the way for the production of oil and gas in paying quantities. Title defects existed which fully authorized Pundt's failure to accept the titles prior to the time of notice of alleged forfeiture and the appointment of a receiver to take over the properties. On the facts shown in the record it would be inequitable and altogether unjust to hold that Pundt spent his money and saved the lease, but lost his solemn contract right to recoupment out of one-half of the oil and gas produced from the development. A forfeiture was not warranted, and the trial court erred in sustaining the master's finding and conclusion in this regard.

National Tank Company has called attention to the fact that its judgment for $1,819.14 should be for $1,656.55, and has moved that the judgment be reduced. The motion to reduce the said amount is granted, and upon remand the trial court will modify the judgment accordingly.

To the extent indicated in this opinion the judgment of the trial court is reversed and the cause is remanded with directions

to determine the respective priorities of the claims and liens of the parties and modify the judgment accordingly. In all other respects and as to all other matters the judgment is affirmed.

Costs of this appeal are to be taxed one-third against Victor S. Johnson, one-third against John G. Pundt, and one-third against W. G. Gray and W. M. Redditt.

Affirmed in part and in part reversed and remanded with directions.